| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO.**<br>1437 Bannock Street, Denver, CO 80202<br>Telephone: (720) 865-8301 | DATE FILED: June 1, 2020 11:08 AM<br>FILING ID: DE988B95B0C46<br>CASE NUMBER: 2020CV31871 |
| **ALL ABOUT THE SMOKE BBQ, LLC, a Colorado limited liability company,**<br><br>Plaintiff,<br><br>v.<br><br>**OHIO SECURITY INSURANCE COMPANY, a New Hampshire Corporation,**<br><br>Defendant. | ^COURT USE ONLY^ |
| *Attorneys for Plaintiff\*<br>Nathanael Archuleta, No. 50075<br>David J. Furtado, No. 28002<br>Furtado Law PC<br>3773 Cherry Creek North Drive, Ste. 575<br>Denver, CO 80209<br>Telephone: (303) 755-2929<br>Facsimile: (303) 309-6463<br>E-Mail: nathanael@furtadolaw.com<br>        dfurtado@furtadolaw.com | Case No:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

COME NOW Plaintiff, All About the Smoke BBQ, LLC, by and through his attorneys Furtado Law PC, and files submits its complaint and jury demand against the above-named Defendant Ohio Security Insurance Company as follows:

### I.     PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, All About the Smoke BBQ, LLC is a Colorado limited liability company with its principal place of business in Fort Morgan, Colorado.

2. Upon information and belief, Defendant Ohio Security Insurance Company is a New Hampshire corporation with its principal place of business in Keene, NH and is authorized to do business in Colorado.

1

EXHIBIT A

3. This Court has jurisdiction over the subject matter of this action and the parties hereto.

4. Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1).

## II. GENERAL ALLEGATIONS

5. Plaintiff bring this action seeking economic and non-economic damages related to Defendant's breach of contract, statutory claims pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of a timely and proper claim for covered benefits.

## II. FACTUAL ALLEGATIONS

6. Upon information and belief, Plaintiff sought and obtained an insurance policy, Policy No. **BKS (19) 57 02 46 95** (hereinafter the "Policy") from Defendant for property located at 617 Main Street, Fort Morgan, Colorado 80701 (hereinafter the "Property").

7. On or about June 6, 2018, a hailstorm hit Plaintiff's Property causing property damage.

8. The language of the policy of insurance issued by Defendant for the Insured Property made this event causing damage to Plaintiffs' property a replacement cost event.

9. In accordance with the Policy, On February 27, 2019, Plaintiff timely submitted a claim to Defendant for its damages after if found interior leaks at its Property.

10. Based upon the coverage purchased from Defendant contained within the Policy, Plaintiff requested timely and full payment for all covered damages arising from the hailstorm.

11. In response to Plaintiff's notice of claim, Defendant inspected the Property damage and found minimal to no damage to the exterior of the Property from the date of loss damages. Upon information and belief, based upon the below appraisal results, it is clear that Defendant's initial investigation of the loss was inaccurate, and Defendant failed to act reasonably in adjusting the claim.

12. On or about March 7, 2019, Defendant also retained Jason Womack with SDII Global to inspect the loss. Upon information and belief, Mr. Womack was retained by Defendant because of the extensive relationship his firm had with Defendant at the time including drafting favorable opinions for Defendant on insurance claims.

13. On or about March 13, 2019, Mr. Womack inspected the Property for damages from the date of loss storm.

14. On or about March 20, 2019, Mr. Womack drafted his engineering report for Defendant and concluded that up to 1.25 inch hail hit the Property within 2 miles of the location.

He also found cracks in the stucco but no hail damage on the EPDM roof membrane. He also determined the that interior leaks were only from unsealed openings in the roofing membrane. He also determined that the cracked stucco was from non-hail sources. Finally, he found evidence of water intrusion in the roofing membrane but failed to associate the infiltration to hail damage.

15. Upon information and belief, after Defendant sent its coverage position to Plaintiff on March 25, 2019, with a replacement cost value of only $1,932.41, there was no movement on the claim until January 2020 when Plaintiff retained a bad faith attorney.

16. On or about January 2020, Plaintiff retained Trae Mindiola as its bad faith attorney on the claim.

17. On or about January 2020, Mr. Mindiola sent its letter of representation and demand for appraisal to Defendant.

18. Upon information and belief, concurrently while appraisal was going, Defendant hired a second opinion engineer, Todd Martin with Nelson Forensics, to investigate the loss. Mr. Martin's hail size data agreed that up to 1.5-inch hail hit the property within 1.2 miles of the location.

19. However, Mr. Martin determined that again the EPDM roof was not damaged from hail but he supported this decision with his hail size determination. Specifically, Mr. Martin determined the hail size data did not show large enough hail to cause damage to the roof. He also determined that there was no physical evidence of hail distress marks on the roof.

20. Separately, on March 10, 2020, the appraisal panel issued their appraisal award with a replacement cost value of $74,971.33 ($47,197.49 ACV).

21. Upon information and belief, despite Mr. Martin's reported findings that were communicated to Defendant, Defendant paid the appraisal award actual cash value under a reservation of rights.

22. On April 22, 2020, Defendant sent Plaintiff its reservation of rights payment letter explaining that it was paying $45,265.08 on the claim and that another $33,789.44 was due on the claim for increased cost of construction as paid when incurred.

23. Upon information and belief, Defendant's April 22, 2020 letter specifically stated that it did not believe the roof was damaged from hail but instead was the result of multiple seam separations on the roof that allowed for water infiltration.

24. Rather than fairly adjust the claim and work with Plaintiff and attempt to adjust the claim properly Defendant's adjuster attempted to minimize the amount of payment of the claim by attempting to state that obvious storm damage did not exist. Also, Defendant's adjuster only performed a cursory overview of the damage when it initially received notice of the claim from Plaintiff. Defendant failed to properly investigate and adjust Plaintiff's loss.

3

25. Defendant owed Plaintiff a duty to ensure its claim was properly investigated in a timely manner, properly adjusted in a timely manner, and properly paid in a timely manner and failed to do all three of these things.

26. The fact that Defendant's adjuster did not adjust Plaintiff's claim properly forced Plaintiff to invoke the appraisal provision of its policy. This resulted in delay and continued delay in Plaintiff receiving the policy benefits it contracted to receive.

27. As a consequence of Defendant's conduct in unreasonably delaying and denying covered benefits due and owning under the Policy, Plaintiff have incurred and continues to incur damages.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

28. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

29. As set forth above, Plaintiff and Defendant entered into a valid, binding and enforceable contract for insurance covering the losses alleged herein.

30. Plaintiff fully complied with all the provisions of the contract, including without limitation paying premiums in a timely fashion and complying with all provisions governing claims and loss. Alternatively, such conditions precedent has been waived or are excused.

31. It is Defendant's duty to pay for Plaintiff' covered losses and damages, but it has refused to do so.

32. Defendant's denial of Plaintiff' claim constitutes a breach of the insurance contract and is a breach of Plaintiff' reasonable expectations concerning the coverage it would receive under their Policy.

33. Defendant's refusal to appraise the loss properly constitutes a breach of the insurance contract and is a breach of Plaintiff' reasonable expectations concerning the coverage it would receive under its Policy.

34. Defendant's failure to conduct a reasonable investigation, failure to appraise the total loss property, failure to hire qualified persons to adjust the loss or advise on the amount of the damage and loss, and failure to pay covered policy benefits constitute breaches of the insurance contract.

35. Defendant decided to deny contractual benefits and failed to pay contractual benefits owed to Plaintiff despite repeated requests for the payment of the covered benefits from Plaintiff. Defendant hired representatives that improperly investigated and improperly adjusted Plaintiff' claim in an attempt to avoid paying the benefits owed. Defendant also failed to hire qualified experts to adjust the claim.

36. Defendant refused to provide the contracted benefits and denied Plaintiff the benefit of its bargain and breached the insurance contract in doing so.

37. The appraisal award also sets the amount of the loss on the claim. Based on Defendant's holdback on the award for ICC, Defendant still owes an additional $33,789.44 on the claim.

38. As a result of Defendant's breaches, Plaintiff suffered damages, including the amount of the claim owed, together with pre-judgment interest at the highest rate allowed by law, and its reasonable attorneys' fees as allowed by law.

## SECOND CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

39. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

40. Plaintiff suffered a loss covered by the Policy and submitted claims for that loss to Defendant.

41. The claimed losses and damages submitted by Plaintiff were covered by the Policy and Plaintiff are owed covered benefits under the Defendant's Policy.

42. Defendant refused to pay for the damaged property and, in fact, hired representatives to minimize the amount of damages, inaccurately appraise the amount of damages, improperly investigate the amount of damage, and improperly pay the amount of damages forcing Plaintiff to become involved in litigation with it causing a delay in payment during the time of the adjustment of the claim.

43. Defendant delayed and denied the payment of covered benefits without a reasonable basis for its actions and continues to delay and deny benefits without a reasonable basis for its actions.

44. The position taken by Defendant deprived Plaintiff of covered benefits since the position asserted by Defendant lacked a reasonable basis upon which to deny benefits.

45. Hiring an agent and representative and directing them to improperly adjust and investigate the claim by merely performing a cursory inspection of the insured property, by not hiring the proper individuals or entities to evaluate Plaintiff' loss is unreasonable.

46. Due to the fact that Defendant engaged in such behavior and lacked a reasonable basis from which to deny the covered benefits makes Defendant responsible to Plaintiff for remedies as provided by C.R.S. § 10-3-1116 for its violation of C.R.S. § 10-3-1115.

5

47. Defendant conducted an improper, incomplete, and/or outcome-orientated investigation of the loss thereby damaging Plaintiff by delaying benefits owed them pursuant to the terms of the Policy.

48. Plaintiff are therefore entitled to two times covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

## PLAINTIFF REQUESTS A JURY TRIAL ON ALL CLAIMS SO TRIABLE

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request this Court enter judgment in its favor and against Defendant its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;
2. Two times the amount of all covered benefits under the Policy;
3. Costs, expert witness fees, and attorneys' fees incurred in prosecuting its claims against Defendants;
4. Other damages resulting from Defendant's bad faith including damages resulting from Defendant's bad faith refusal to cover the damages to Plaintiff' property;
6. Pre- and post-judgment interest; and
7. For such other and further relief as this Court may deem just.

Respectfully submitted this 1st day of June 2020.

FURTADO LAW PC

/s/ Nathanael Archuleta
Nathanael Archuleta, No. 50075
David J. Furtado, No. 28002
Furtado Law PC
3773 Cherry Creek North Drive, Ste. 575
Denver, CO 80209
Telephone: (303) 755-2929
Facsimile: (303) 309-6463
E-Mail: nathanael@furtadolaw.com
E-Mail: dfurtado@furtadolaw.com
***Attorneys for Plaintiff***